CASE 26—PETITION ORDINARY—JUNE 28.

## Shultz vs. Morrison, &c.

APPEAL FROM MASON CIRCUIT COURT.

In an action upon an attachment bond, brought by the defendant in the attachment to recover expenses for attorney's fees in successfully contesting the attachment, he can only recover where he has paid or contracted to pay such fees, and upon proof that they are reasonable. Refer to *Doe, &c. vs. Perkins*, 8 *B. Mon.*, 198.

F. T. HORD, for appellant, cited *Chitty on Contracts*, 743 ; 2 *Kent's Com.*, 626 ; *Story on Contracts*, 810 ; 8 *B. Mon.*, 200.

JNO. R. CLARKE, for appellees, cited 8 *B. Mon.*, 54 ; *Ib.*, 160.

JUDGE DUVALL DELIVERED THE OPINION OF THE COURT:

In March, 1859, Shultz brought an action against Morrison and wife, to recover an amount alleged to be then due, and to become due, for the rent of the "Lee House," in Maysville, and upon the allegations of the petition to the effect that the defendants were about to remove their furniture and other personal property from the leased premises, an attachment is-

sued, and was levied upon the furniture and effects of the defendants.

Before suing out the attachment the plaintiff, with Collins as his surety, executed the following covenant:

"We undertake that Christian Shultz shall pay to Mrs. Nancy Morrison the damages, not exceeding two thousand dollars, which she may sustain by reason of the issuing of this attachment if it shall appear that the same was wrongfully obtained.

It appears from the record that in November following, the attachment was, on motion of the defendants, and "upon proof being heard," discharged, and thereupon the action was discontinued on the motion of the plaintiff.

Morrison and wife then instituted the present action against Shultz and his surety, upon the attachment bond, for the recovery of the damages they claim to have sustained in consequence of the wrongful issuing of the attachment. They aver that their furniture and property which was seized by the officer under the attachment was greatly injured and some of it lost and destroyed, and that they were "put to great expense in employing counsel to attend to said attachment."

Shultz, in his original and amended answer, admitted the execution of the bond, but denied the allegations of the petition with respect to the alleged damages.

There was a verdict and judgment in favor of the plaintiffs for three hundred dollars, and the defendant has appealed.

The only evidence offered by the appellees upon the trial, to prove the expense they had incurred in the employment of counsel to defend the attachment, was the testimony of a lawyer, who proved that the services of the two attorneys who defended the attachment suit mentioned were worth from $50 to $100, that $50 would be a moderate fee, and $100 would not be too high. It was also proved that the appellees had not paid either of the attorneys any fee in that suit.

Upon this evidence the court, at the instance of the appellees, instructed the jury, in substance, that they should find for the appellees such damages as they had sustained by reason of the suing out of the attachment, and also, the expense they

Shultz vs. Morrison, &c.

may have incurred "in defending the attachment and procuring its discharge, *including reasonable attorney's fees.*"

Whether the court erred in giving this instruction, against the exception taken at the time, by the appellant, is the principal question in the case.

The undertaking of the appellant was, as we have seen, to pay to the appellees the damages they might sustain by reason of the issuing of the attachment, if it should appear that it was wrongfully obtained. And one of the breaches of the covenant assigned in the petition is, that the appellees were put to great expense in employing counsel, &c. Did they offer such proof of this allegation as to have authorized the instruction complained of? We think not. The evidence not only fails to show the amount of such alleged expense, but it wholly fails to show that the appellees were put to any expense whatever. So far from proving that they paid their attorneys for their services in the attachment suit, the proof is that they had paid nothing. Nor is it shown that any express contract was ever made with respect to the compensation of the attorneys, or that the appellees have even incurred any liability to the attorneys for fees, except such as may be implied from the rendition of the services on the one part, and the acceptance of them on the other. But the amount of this implied liability is altogether uncertain. The witness states that fifty dollars would be a moderate fee, and that a hundred dollars would not be too much. Which of these two sums may have been allowed by the jury, in estimating the damages to which the appellees were entitled, it is impossible to determine. They may have allowed the larger sum, and if it should turn out that the attorneys should hereafter claim, or should be able to recover, the smaller sum only, for their services, the injustice done the appellant by the instruction under consideration, and by the verdict which it authorized and superinduced, as must be assumed, is perfectly obvious.

It is clear that good policy demands the adoption of some more just and certain criterion for estimating the damages in such cases. And we know of no safer rule upon this subject than that laid down in the case of *Doe, &c. vs. Perkins*, (8 B.

*Mon.*, 198.) It is true, that was an action of trespass brought for the recovery of *mesne profits*, &c., but the principle there settled, and the reasoning which demonstrates the policy and correctness of that principle, apply with manifest propriety to the case before us, and we do not hesitate, therefore, to adopt it as the rule which must be observed in ascertaining the amount of damages to which the defendant in similar cases may be subjected.

The instructions, are, in all other respects, unobjectionable.

For the error mentioned the judgment is reversed, and the cause remanded for a new trial and further proceedings in conformity with this opinion.