DEUTSCHE BANK NATIONAL TRUST COMPANY, trustee,[1] *vs.*
FAUSTIN GABRIEL & others.[2]

No. 11-P-415.

Suffolk. December 2, 2011. - April 10, 2012.

Present: KAFKER, FECTEAU, & WOLOHOJIAN, JJ.

*Summary Process,* Appeal. *Practice, Civil,* Summary process, Summary judgment, Affirmative defense. *Deed. Statute,* Construction.

For purposes of summary judgment in a summary process action, the plaintiff bank was entitled to rely on a certified copy of the foreclosure deed, rather than the original [565-568]; further, the affidavit of sale submitted by the plaintiff bank, which largely tracked the language of the statutory form affidavit in G. L. c. 183 was, as a matter of law, sufficient to satisfy the requirements of G. L. c. 244, § 15 [568-570].

The defendants in a summary process action were not entitled to assert a conditions defense (i.e., to assert that they were not obligated to pay rent because of the conditions and disrepair of the property) pursuant to G. L. c. 239, § 8A, where they failed to allege that they were ever tenants, or that they had leased or rented the premises at any time. [570-573]

SUMMARY PROCESS. Complaint filed in the Boston Division of the Housing Court Department on November 30, 2009.

The case was heard by *MaryLou Muirhead,* J., on a motion for summary judgment.

*Robert J. Shapiro* for the defendants.

*Thomas J. Santolucito* for the plaintiff.

*Esme Caramello, David Grossman, & Betny Townsend,* for City Life/Vida Urbana & another, amici curiae, submitted a brief.

WOLOHOJIAN, J. The defendants (members of a single family)

[1] Of the HSI Asset Securitization Corporation Trust 2007-HE1.

[2] Kathy Gabriel, Faustina K. Gabriel, Raul Gabriel, Marian Gabriel, Quinton Gabriel, Venita Gabriel, and Ignatious Gabriel. Because the defendants share the same last name, we refer to them by their first names.

have occupied[3] a dwelling at 195-197 Callender Street in the Dorchester section of Boston for over twenty-eight years. In 2006, defendant Quinton Gabriel was the property's owner,[4] and he granted a mortgage to Wells Fargo Bank, N.A. (Wells Fargo), which was secured by the premises. Wells Fargo foreclosed on that mortgage at a foreclosure sale held in April, 2009, and shortly thereafter, the plaintiff, Deutsche Bank National Trust Company (Deutsche Bank or bank), acquired title by foreclosure deed.[5]

Deutsche Bank subsequently brought a summary process action in the Housing Court seeking to evict the defendants, and summary judgment was entered in its favor.[6] On appeal, the defendants raise two issues. First, they argue that Deutsche Bank was not entitled to summary judgment primarily because the record contained only a certified copy of the deed (rather than the original). Second, they argue that they should have been allowed to assert a conditions defense, pursuant to G. L. c. 239, § 8A, even though they were occupants of the property, rather than tenants under a lease. We affirm.[7,8]

*Discussion.* 1. *Sufficiency of summary judgment record.* Deutsche Bank, having acquired the property after a foreclosure sale, was both required and entitled to use summary process,

---

[3]They have never rented or leased the premises, and they have never occupied the premises as tenants.

[4]Defendants Faustin and Venita owned the property from 1981 to 2006. They transferred it to Quinton in 2006.

[5]The defendants do not challenge the Housing Court's determination that Deutsche Bank served notices to vacate approximately six months later on all the defendants except for Ignatious. And they do not contest the Housing Court's determination that the failure to serve Ignatious was irrelevant vis-a-vis the codefendants, and not material with respect to Ignatious because he derives his right to occupy the premises through Quinton and is therefore not entitled to a separate notice to vacate.

[6]Although nothing turns on it, we note that this is the second summary process action brought by Deutsche Bank relating to this property and also the second summary judgment motion.

[7]We review a decision to grant summary judgment de novo. "The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991).

[8]We acknowledge the amicus brief of City Life/Vida Urbana and Oliver Hendricks.

G. L. c. 239, § 1, to recover possession from the defendants, who continued to occupy the premises after the foreclosure. *Attorney Gen.* v. *Dime Sav. Bank of N.Y., FSB*, 413 Mass. 284, 291 (1992). "The purpose of summary process is to enable the holder of the legal title to gain possession of premises wrongfully withheld. Right to possession must be shown and legal title may be put in issue. . . . Legal title is established in summary process by proof that the title was acquired strictly according to the power of sale provided in the mortgage; and that alone is subject to challenge." *Bank of N.Y.* v. *Bailey*, 460 Mass. 327, 333 (2011), quoting from *Wayne Inv. Corp.* v. *Abbott*, 350 Mass. 775, 775 (1966). "To prevail on its motion for summary judgment, [Deutsche Bank] 'had the burden of showing that there [we]re no material facts in dispute regarding its legal title to the property.' " *Bank of N.Y., supra* at 334, quoting from *Metropolitan Credit Union* v. *Matthes*, 46 Mass. App. Ct. 326, 330 (1999).

a. *Certified copy of deed in lieu of original.* Relying on *Samuels* v. *Borrowscale*, 104 Mass. 207 (1870) (*Samuels*), the defendants argue that the bank was not entitled to summary judgment where it submitted only a certified copy of the foreclosure deed, rather than the original. *Samuels*, decided well before the era of reliable mechanical reproduction of documents, held that

> "a party relying on a deed made immediately to himself or the other party, or which is presumed to be in the custody of either, must produce the original deed, or lay a foundation in the usual manner for secondary evidence; but that of other deeds, acknowledged and recorded in accordance with the statutes, a certified copy from the registry is original evidence, instead of the deed itself, and of course dispenses with calling an attesting witness or other proof of execution."

*Id.* at 209. The *Samuels* rule, as we shall call it for the sake of convenience, was actively invoked until 1897,[9] after which none

---

[9]The *Samuels* rule was cited, commented on, or relied on in *Stockwell* v. *Silloway*, 105 Mass. 517, 519 (1870); *Brown* v. *Brown*, 108 Mass. 386, 391-392 (1871); *Gragg* v. *Learned*, 109 Mass. 167, 168 (1872); *Chamberlin* v. *Huguenot Mfg. Co.*, 118 Mass. 532, 536 (1875); *Draper* v. *Hatfield*, 124

of our appellate cases appears to have referred to, or relied on, it.[10],[11]

In 1941, apparently reflecting a recognition of both the development and reliability of mechanical forms of document reproduction, the Legislature enacted G. L. c. 233, § 79A, which provides in relevant part:

> "Copies of public records, . . . and of records of banks, trust companies, insurance companies and hospitals, whether or not such records or copies are made by the photographic or microphotographic process, shall, when duly certified by the person in charge thereof, be admitted in evidence equally with the originals."

*Id.*, as appearing in St. 1948, c. 154. Under § 79A, the admissibility of a certified copy in lieu of an original deed does not turn on whether the person seeking to introduce it is a party to the deed. The statute, by its straightforward and clear terms, applies to all public records regardless of their proponent at trial; it does not codify or incorporate the *Samuels* rule.

When a subsequent statute is in conflict with an earlier common-law evidentiary rule, the court has held that "[a]s a legislative enactment making certain evidence admissible, [the statute] superseded any prior common-law evidentiary rule excluding such evidence." *Commonwealth* v. *Harris*, 443 Mass. 714, 724 n.8 (2005) (construing a different section of c. 233).[12] See *Thomes* v. *Meyer Store, Inc.*, 268 Mass. 587, 589 (1929). That is precisely the situation here: unlike the *Samuels* rule, G. L. c. 233, § 79A, does not condition the admissibility of certified copies of deeds on whether their proponent was a party to them. The common-law *Samuels* rule has accordingly been

Mass. 53, 57 (1878); *Commonwealth* v. *Richardson*, 142 Mass. 71, 74 (1886); *O'Neil* v. *Webster*, 150 Mass. 572, 573 (1890); *New York, N.H. & H.R.R.* v. *Benedict*, 169 Mass. 262, 266 (1897).

[10]*Samuels* was cited by the Supreme Judicial Court for a different, and unrelated, proposition as recently as 2003. See *Lawrence* v. *Concord*, 439 Mass. 416, 421 (2003).

[11]The *Samuels* rule was relied upon by the Appellate Division in *Federal Natl. Mort. Assoc.* v. *Saric*, 2010 Mass. App. Div. 177 (2010).

[12]If a subsequent statute does not conflict with prior common law, then the common law continues to control. *Trombley* v. *Stevens-Duryea Co.*, 206 Mass. 516, 519 (1910).

superseded by the subsequent statute,[13] and Deutsche Bank was entitled to rely on a certified copy of the deed to support its motion for summary judgment.

b. *Adequacy of affidavit of sale.* The defendants also challenge the adequacy of the affidavit of sale submitted by the bank in support of its motion for summary judgment. They contend that the affidavit did not satisfy G. L. c. 244, § 15, as appearing in St. 1994, c. 341, § 1, which provides:

> "The person selling, or the attorney duly authorized by a writing or the legal guardian or conservator of such person, shall, after the sale, cause a copy of the notice and his affidavit, fully and particularly stating his acts, or the acts of his principal or ward, to be recorded in the registry of deeds for the county or district where the land lies, with a note or reference thereto on the margin of the record of the mortgage deed, if it is recorded in the same registry. If the affidavit shows that the requirements of the power of sale and of the statute have in all respects been complied with, the affidavit or a certified copy of the record thereof, shall be admitted as evidence that the power of sale was duly executed."

A model statutory form of an affidavit of sale under a power of sale in a mortgage is found at Form 12 of the Appendix to G. L. c. 183.[14] The statutory form "shall be sufficient," even if it is altered to suit the particular circumstances (in other words, if the blanks in the form are filled in as appropriate). G. L.

---

[13]Although no issue has been raised regarding the authenticity of the certified copy of the deed, we note that the authenticity of certified copies of public records is governed by Mass.R.Civ.P. 44, 365 Mass. 807 (1974).

[14]Form 12 provides as follows:

"[To be filled in] named in the foregoing deed, make oath and say that the principal [to be filled in] interest [to be filled in] obligation [to be filled in] mentioned in the mortgage above referred to was not paid or tendered or performed when due or prior to the sale, and that I published on the [to be filled in] day of [to be filled in] 19[to be filled in], in the [to be filled in], a newspaper published or by its title page purporting to be published in [to be filled in] aforesaid and having a circulation therein, a notice of which the following is a true copy:

"(Insert advertisement.)

"Pursuant to said notice at the time and place therein appointed, I sold the mortgaged premises at [to be filled in] public action by [to be filled in], an

c. 183, § 8. Although the statutory form affidavit appears in c. 183, rather than in c. 244, we see no reason to conclude that an affidavit of sale that conforms to the model form contained in c. 183 would not also satisfy the requirements of G. L. c. 244, § 15. Indeed, a logical and harmonious construction of the statutory scheme would lead one naturally to conclude that an affidavit of sale that satisfies one chapter would satisfy the other. See *Canton* v. *Commissioner of the Mass. Hy. Dept.*, 455 Mass. 783, 791-792 (2010), and cases cited (applicable rules of statutory construction require courts to "construe statutes that relate to the same subject matter as a harmonious whole and avoid absurd results").

Here, the summary judgment record included an affidavit by attorney Francis J. Nolan that largely tracked the language of the statutory form affidavit.[15] It omitted no material information from the statutory form, and its only additions were those pertinent

auctioneer, to [to be filled in], above named, for [to be filled in] dollars, bid by him, being the highest bid made therefor at said auction.

"Sworn to by the said [to be filled in] 19 [to be filled in], before me."

[15]"I, Francis J. Nolan, of Harmon Law Offices, PC, as Attorney in Fact* for Wells Fargo Bank, N.A. make oath and say that the principal and interest obligation mentioned in the mortgage above referred to were not paid or tendered or performed when due or prior to the sale, and that Wells Fargo Bank, N.A. caused to be published on February 13, 2009, February 20, 2009 and February 27, 2009 in the Boston Herald, a newspaper having a general circulation in Dorchester (Boston), a notice of which the following is a true copy. (See attached Exhibit A [copy of the newspaper notice]).

"I also complied with Chapter 244, Section 14 of the Massachusetts General Laws, as amended, by mailing the required notices certified mail, return receipt requested.

"Pursuant to said notice at the time and place therein appointed the auction was postponed by public proclamation to April 7, 2009 at 12:00 p.m. upon the mortgaged premises, at which time and place Wells Fargo Bank, N.A. sold the mortgaged premises at public auction by Charles F. Cawley, a duly licensed auctioneer, to Wells Fargo Bank, N.A. for TWO HUNDRED THIRTY-FIVE THOUSAND AND $^{00}/_{100}$ ($235,000.00) DOLLARS bid by Wells Fargo Bank, N.A., being the highest bid made therefore at said auction. Said bid was then assigned by Wells Fargo Bank, N.A. to Deutsche Bank National Trust Company, as Trustee for HSI Asset Securitization Corporation Trust 2007-HE1, as evidenced by assignment of bid to be recorded herewith as Exhibit 'B'.

[signature by Attorney Nolan]

"*For signatory authority, please see the Limited Power of Attorney recorded with the Suffolk County Registry of Deeds at Book 43361, Page 106."

The notary's attestation, signature, and seal followed.

to the specific facts of the foreclosure sale of the property at issue in this case. A comparison of the text of the model form (note 14, *supra*) with that of Attorney Nolan's affidavit (note 15, *supra*) shows the limited differences between the two. Indeed, the defendants point to no specific or significant difference between Attorney Nolan's affidavit and the statutory form. Attorney Nolan's affidavit was, therefore, as a matter of law "sufficient" under G. L. c. 183, § 8, and accordingly also satisfied the requirements of G. L. c. 244, § 15.

The defendants argue that even if Attorney Nolan's affidavit conformed to the statutory model, it did not satisfy G. L. c. 244, § 15, because it did not reference the specific mortgage at issue but merely identified "the mortgage above referred to." (See note 15, *supra*). We are unpersuaded. First, as noted above, this language tracks precisely that of the model statutory form. Second, Attorney Nolan's affidavit was filed in the registry of deeds as a packet together with the foreclosure deed. The foreclosure deed was filed in the Suffolk County registry of deeds at book 44863, page 230-231. Attorney Nolan's affidavit (together with its exhibits) began consecutively and immediately thereafter at page 232. The foreclosure deed identified the mortgage "from Quinton Gabriel to Wells Fargo Bank, N.A. dated September 27, 2006 and recorded with the Suffolk County Registry of Deeds at Book 40487, Page 203." Attorney Nolan's reference in his affidavit (consistent with the language of the statutory model language) to the "mortgage above referred to" identified the mortgage as the one in the foreclosure deed with which his affidavit was filed and was sufficient to satisfy the requirements of G. L. c. 244, § 15.[16]

2. *Conditions defense.* The answer contained an affirmative

---

[16]Deciding as we do, we need not (and do not) reach the defendants' claim that the affidavit of Tyler N. Smith, an "REO Supervisor" of Premiere Asset Services, "a servicer" authorized to act for Deutsche Bank with regard to the property, was defective in that it does not state that it was made on personal knowledge or disclose the basis of Smith's knowledge. See Mass.R.Civ.P. 56(e), 365 Mass. 824 (1974) (affidavits supporting summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein"). Smith's affidavit contained nothing of import that was not contained in the certified records and the Nolan affidavit. No aspect of our decision rests on the contents of the Smith affidavit.

defense under G. L. c. 239, § 8A, asserting that the defendants were not obligated to pay rent because of the conditions and disrepair of the property; such a claim is colloquially known as a "conditions defense." Deutsche Bank's motion to strike was allowed on the ground that the defense is available only in actions "to recover possession of any premises rented or leased for dwelling purposes." G. L. c. 239, § 8A, as appearing in St. 1977, c. 263. The defendants argue that because they became tenants at sufferance after the foreclosure (a contention we accept arguendo), they were "occupants" within the meaning of G. L. c. 239, § 8A, and therefore, the motion to strike should have been denied.

Massachusetts Rule of Civil Procedure 12(f) permits a plaintiff to move to strike "any insufficient defense."[17] "A motion to strike a defense as insufficient is the counterpart of a motion under Rule 12(b)(6). . . . Under Rule 12(f), as under existing federal practice, a motion to strike an insufficient defense searches the pleadings." 1973 Reporter's Notes to Mass. R.Civ.P. 12(f), 46 Mass. Gen. Laws Ann. at 146 (West 2006). "Because a motion of this sort challenges the legal sufficiency of the pleading, it is governed by the same standards as a motion to dismiss filed pursuant to [Mass.] R. Civ. P. 12(b)(6)." *In re Gabapentin Patent Litigation*, 648 F. Supp. 2d 641, 647 (D.N.J. 2009) (construing the analogous Federal rule). See generally Wright & Miller, 5C Federal Practice & Procedure § 1381 (3d ed. 2004). Accordingly, we take as true the allegations of the answer, as well as such inferences as may be drawn therefrom

[17]Although the Uniform Summary Process Rules govern summary process actions such as this one, the rules of civil procedure also govern to the extent they are not inconsistent. Uniform Summary Process Rule 1 (2010). "[T]he Uniform Summary Process Rules have incorporated by reference the Massachusetts Rules of Civil Procedure to be used in a residuary capacity when they are not 'inconsistent' with the Uniform Summary Process Rules . . . Uniform Summary Process Rule 1 should be applied as written. It is not unusual in law for one set of rules (in this instance, the Massachusetts Rules of Civil Procedure) that do not by their own provisions apply in a situation to be incorporated by reference by another set of rules (in this instance, the Uniform Summary Process Rules)." 1988 Reporter's Notes to Mass.R.Civ.P. 81(a)(7), 46 Mass. Gen. Laws Ann. at 1100 (West 2006). The Uniform Summary Process Rules do not set out a procedure for moving to strike portions of pleadings and, accordingly, we look to the Massachusetts Rules of Civil Procedure.

in the defendants' favor.[18] See *Golchin* v. *Liberty Mut. Ins. Co.*, 460 Mass. 222, 223 (2011).

General Laws c. 239, § 8A, as inserted by St. 1977, c. 963, provides:

> "In any action under this chapter to recover possession of *any premises rented or leased for dwelling purposes*, brought pursuant to a notice to quit for nonpayment of rent, or where the tenancy has been terminated without fault of the tenant or occupant, the tenant or occupant shall be entitled to raise, by defense or counterclaim, any claim against the plaintiff relating to or arising out of such property, rental, tenancy, or occupancy for breach of warranty, for a breach of any material provision of the rental agreement, or for a violation of any other law" (emphasis added).

The answer does not allege that the premises were ever rented or leased, whether by Deutsche Bank (or anyone else) or to the defendants (or anyone else). The answer alleges only that the defendants occupied the premises. There is no allegation that the defendants were ever tenants, or that they had leased or rented the premises at any time. On the face of the answer, therefore, the defendants were not entitled to assert a conditions defense under G. L. c. 239, § 8A, and the motion to strike was properly allowed.

Relying on *Hodge* v. *Klug*, 33 Mass. App. Ct. 746 (1992) (*Hodge*), the defendants argue that tenants at sufferance, as "occupants," may assert a conditions defense under G. L. c. 239, § 8A. Their argument, however, ignores the critical distinction that, in *Hodge*, the premises had previously been rented to the defendant in a tenancy at will, rent payable monthly in advance. After a number of years, the owners decided to sell the property and served notice to quit on the tenant, who thereafter refused to leave. A summary process action ensued, and on appeal we held that § 8A defenses are not limited to tenants under a lease or tenants at will, i.e., acknowledged tenants, but can be available to "occupants," including tenants at sufferance. *Id.* at 754.

---

[18]We note that neither party briefed the appropriate standard of review, nor did their briefs below address the issue.

*Hodge* does not stand for the proposition that § 8A defenses are available where the premises have never been leased or rented, as is the case here.[19] Instead, it stands for the proposition that a person who is entitled to assert defenses under G. L. c. 239, § 8A, does not lose that entitlement by later becoming a tenant at sufferance.[20] Here, as we noted above, there was no allegation that the defendants ever rented or leased the premises.

*Conclusion.* For the reasons set forth above, the Housing Court judgment of summary process for the plaintiff is affirmed.

*So ordered.*

---

[19]We here reach the same conclusion reached by the Housing Court judge in his extremely thoughtful and comprehensive memorandum and decision.

[20]This understanding of *Hodge* is consistent with the recent construction of G. L. c. 186A, § 1. See *Federal Natl. Mort. Assn.* v. *Nunez,* 460 Mass. 511, 518 n.8 (2011).