NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12139

FEDERAL NATIONAL MORTGAGE ASSOCIATION  vs.
ELVITRIA M. MARROQUIN & others.[1]


Essex.      January 9, 2017. - May 11, 2017.

Present:  Gants, C.J., Lenk, Hines, Gaziano, Lowy, & Budd, JJ.


Mortgage, Foreclosure, Real estate.  Real Property, Mortgage,
    Sale.  Notice, Foreclosure of mortgage.



Summary process.  Complaint filed in the Northeast Division
of the Housing Court Department on June 18, 2012.

The case was heard by David D. Kerman, J., on motions for
summary judgment.

The Supreme Judicial Court granted an application for
direct appellate review.


Cody J. Cocanig for the plaintiff.
Dayne Lee (Eloise P. Lawrence also present) for Elvitria M.
Marroquin.
Joshua T. Gutierrez, Daniel D. Bahls, & Andrew S. Webman,
for Lewis R. Fleischner & another, amici curiae, submitted a
brief.

---

[1] Julio E. Vasquez and Christopher Vasquez.

GANTS, C.J.  In Pinti v. Emigrant Mtge. Co., 472 Mass. 226, 227, 232 (2015), we held that a foreclosure by statutory power of sale pursuant to G. L. c. 183, § 21, and G. L. c. 244, §§ 11-17C, is invalid unless the notice of default strictly complies with paragraph 22 of the standard mortgage, which informs the mortgagor of, among other things, the action required to cure the default, and the right of the mortgagor to bring a court action to challenge the existence of a default or to present any defense to acceleration and foreclosure.  We applied this holding to the parties in Pinti but concluded that our decision "should be given prospective effect only."  Id. at 243.  We therefore declared that the decision "will apply to mortgage foreclosure sales of properties that are the subject of a mortgage containing paragraph 22 or its equivalent and for which the notice of default required by paragraph 22 is sent after the date of this opinion," which was issued on July 17, 2015.  Id.  We did not reach the question whether our holding should be applied to any case pending in the trial court or on appeal.  Id. at 243 n.25.  We reach that question here, and conclude that the Pinti decision applies in any case where the issue was timely and fairly asserted in the trial court or on appeal before July 17, 2015.  Because we conclude that the defendants timely and fairly raised this issue in the Housing Court before that date, and because the notice of default did not strictly

comply with the requirements in paragraph 22 of the mortgage, we affirm the judge's ruling declaring the foreclosure sale void.

Background.  In December, 2005, the defendants[2] secured a mortgage loan in the amount of $312,000 from American Mortgage Express Corporation (American Mortgage) and, as security for the loan, granted a mortgage on their home to Mortgage Electronic Registration Systems, Inc. (MERS), which American Mortgage had designated as the mortgagee in a nominee capacity.  MERS subsequently assigned the mortgage to Bank of America, N.A. (Bank of America), as successor by merger to BAC Home Loans Servicing, LP, formerly known as Countrywide Home Loans Servicing, LP.

After the defendants failed to make their mortgage payments, the loan servicer, Countrywide Home Loans Servicing, LP, on October 17, 2008, mailed the defendants a notice of intention to foreclose (notice of default).  The notice informed the defendants that they were in default and set forth the amount due to cure the default.  The notice warned in relevant part:

---

[2] The mortgage loan was secured by the defendants Elvitria M. Marroquin and Julio E. Vasquez.  The limited record before us suggests that Christopher Vasquez is Marroquin's son, and that a motion filed by the Federal National Mortgage Association to amend the summons and complaint to include him was granted by the Housing Court judge.  For convenience, we refer to "the defendants" throughout this opinion.

"If the default is not cured on or before January 15, 2009, the mortgage payments will be accelerated with the full amount remaining accelerated and becoming due and payable in full, and foreclosure proceedings will be initiated at that time. As such, the failure to cure the default may result in the foreclosure and sale of your property. . . . You may, if required by law or your loan documents, have the right to cure the default after the acceleration of the mortgage payments and prior to the foreclosure sale of your property if all amounts past due are paid within the time permitted by law. . . . Further, you may have the right to bring a court action to assert the non-existence of a default or any other defense you may have to acceleration and foreclosure."

The defendants did not cure the default, and in March, 2012, Bank of America gave notice and conducted a foreclosure sale by public auction of the mortgaged home. Bank of America was the high bidder at the foreclosure auction and subsequently assigned its winning bid to the Federal National Mortgage Association (Fannie Mae or plaintiff), which properly recorded the foreclosure deed conveying title of the property in May, 2012. On June 18, 2012, Fannie Mae initiated a summary process action in the Housing Court to evict the defendants from the property. On June 19, 2012, the defendants, representing themselves but assisted by counsel, filed an answer in which, by checking a box, they proffered as a defense to the eviction that "[t]he plaintiff's case should be dismissed because it does not have proper title to the property and therefore does not have standing to bring this action and/or cannot prove a superior right to possession of the premises."

For reasons not apparent from the record, Fannie Mae did not move for summary judgment until June, 2015, where, among other arguments, it contended that Bank of America had complied with the terms of the mortgage in exercising the power of sale, and specifically asserted that the notice of default had complied with paragraph 22 of the mortgage.[3] On September 23, 2015, the defendants filed a cross motion for summary judgment in which they argued that the notice of default failed to strictly comply with the terms of paragraph 22 of the mortgage and that the defendants should be entitled to the benefit of our decision in Pinti even though the notice of default was sent well before the issuance of that opinion.

In October, 2015, the judge granted the defendants' cross motion for summary judgment and denied the plaintiff's motion.

---

[3] Paragraph 22 of the mortgage provides that in the event the borrower commits a breach of any term of the mortgage, prior to acceleration of the loan the lender must notify the borrower of

"(a) the default; (b) the action required to cure the default; (c) a date, not less than [thirty] days from the date the notice is given to [the defendants], by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by [the mortgage]."

Paragraph 22 further provides that such notice must inform the borrower "of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of the borrower to acceleration and sale." It also declares that, if the default is not timely cured, the lender "may invoke the statutory power of sale."

The judge found that the issue in Pinti had been "timely and fairly raised," and concluded that our decision in Pinti should apply to all cases similarly situated that were pending in the trial court or on appeal where the issue had been timely and fairly raised before July 17, 2015.  The judge also concluded that the notice of default failed to strictly comply with the requirement in paragraph 22 of the mortgage that the notice shall inform the borrower "of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of the borrower to acceleration and sale."  The judge found that, by stating, "You may, if required by law or your loan documents, have the right to cure the default after the acceleration of the mortgage payments and prior to the foreclosure sale of your property . . . ," and "you may have the right to bring a court action to assert the non-existence of a default or any other defense you may have to acceleration and foreclosure" (emphasis added), the notice "significantly, and inexcusably, differed from, watered . . . down, and overshadowed the notice that was contractually and legally required by the mortgage."  He added that "there was no excuse for the difference in language" and that it was impossible to imagine any purpose for drafting a notice that failed to track the language of the mortgage "unless, of course,

the purpose was to discourage [b]orrowers from asserting their rights."[4]

After the judge issued his decision, the Appeals Court held in Aurora Loan Servs., LLC v. Murphy, 88 Mass. App. Ct. 726, 727 (2015), that the Pinti decision applies to cases pending on appeal where the claim that the notice of default failed to strictly comply with the notice provisions in the mortgage had been "raised and preserved" before the issuance of the decision. Although the issue was not before it, the Appeals Court declared that "the Pinti rule" did not extend to cases pending in the trial court. Id. at 732. Relying on this dictum, the plaintiff moved to vacate the judgment under Mass. R. Civ. P. 60 (b), 365 Mass. 828 (1974). The judge denied the motion, and the plaintiff appealed. We allowed the defendants' application for direct appellate review.

Discussion. 1. Application of the Pinti decision to pending cases. Our decision in Pinti was grounded in the requirement in G. L. c. 183, § 21, that, before a mortgagee may

---

[4] The judge analogized the warning in the notice of default to a Miranda warning that informed a suspect before interrogation:

"You [may] have the right to remain silent. If you give up the right [and if you have that right], anything you say or do [may] ~~can and will~~ be used against you in a court of law. You [may] have the right to an attorney. If you cannot afford an attorney [and if you have that right], one [may] ~~will~~ be appointed for you. Do you understand these rights as they have been read to you?"

exercise the power of sale in a foreclosure, it must "first comply[] with the terms of the mortgage and with the statutes relating to the foreclosure of mortgages by the exercise of a power of sale."  Because the power of sale is a "substantial power" that permits a mortgagee to foreclose without judicial oversight, we followed the traditional and familiar rule that "'one who sells under a power [of sale] must follow strictly its terms'; the failure to do so results in 'no valid execution of the power, and the sale is wholly void.'"  Pinti, 472 Mass. at 232-233, quoting U.S. Bank Nat'l Ass'n v. Ibanez, 458 Mass. 637, 646 (2011).  See Pryor v. Baker, 133 Mass. 459, 460 (1882) ("The exercise of a power to sell by a mortgagee is always carefully watched, and is to be exercised with careful regard to the interests of the mortgagor").

Although it had long been established in law that the failure to strictly comply with the terms of a mortgage renders void an otherwise valid foreclosure sale, we gave our decision "prospective effect only, because the failure of a mortgagee to provide the mortgagor with the notice of default required by the mortgage is not a matter of record and, therefore, where there is a foreclosure sale in a title chain, ascertaining whether clear record title exists may not be possible."  Pinti, 472 Mass. at 243.  Our concern was that a third party who purchases property that had once been sold at a foreclosure auction would

not, through a title search, be able to determine whether the notice of default strictly complied with the terms of the mortgage. It would therefore be nearly impossible to eliminate the risk that the foreclosure sale would later be declared void and that the title would be returned to the foreclosed property owner. See id. We presumed that, after our decision in Pinti, mortgagees "as a general matter" would address this uncertainty by executing and recording "an affidavit of compliance with the notice provisions of paragraph 22 that includes a copy of the notice that was sent to the mortgagor pursuant to that paragraph." Id. at 244. However, we applied our ruling to the parties in Pinti, id. at 243, citing Eaton v. Federal Nat'l Mtge. Ass'n, 462 Mass. 569, 589 (2012), and deferred the question whether our holding "should be applied to any other class of cases pending on appeal." Id. at 243 n.25.

In Galiastro v. Mortgage Elec. Registration Sys., Inc., 467 Mass. 160, 167-170 (2014), we addressed that same issue in a closely parallel context. In Eaton, 462 Mass. at 571, we declared that a foreclosure by power of sale is invalid unless a foreclosing party holds the mortgage and also either holds the underlying note or acts on behalf of the note holder. We applied this rule to the parties in Eaton, but otherwise gave the ruling prospective effect only. Id. In Galiastro, supra at 168, we extended the benefit of our decision in Eaton to

litigants who had preserved this issue and whose cases were pending on appeal at the time that Eaton was decided.  We declared that "[w]here multiple cases await appellate review on precisely the same question, it is inequitable for the case chosen as a vehicle to announce the court's holding to be singled out as the 'chance beneficiary' of an otherwise prospective rule."  Galiastro, supra at 167-168, citing United States v. Johnson, 457 U.S. 537, 555 n.16 (1982), and Commonwealth v. Pring-Wilson, 448 Mass. 718, 736 (2007).  Limiting the application of prospective rulings to such a "chance beneficiary" would mean that something as arbitrary as the speed at which a case is litigated might determine its outcome, as only the first case raising this issue to reach the Supreme Judicial Court would get the benefit of the ruling.  It would also greatly diminish the "incentive to bring challenges to existing precedent" by depriving similarly situated litigants "of the benefit for the work and expense involved in challenging the old rule."  Galiastro, supra at 169, quoting Powers v. Wilkinson, 399 Mass. 650, 664 (1987).

     The same principles underlying our decision in Galiastro to extend the Eaton rule to cases pending on appeal cause us to extend the Pinti rule to cases pending in the trial court where the Pinti issue was timely and fairly raised before we issued our decision in Pinti.  In such cases, the homeowner-mortgagors

are similarly situated to the plaintiffs in Pinti, because they presented the same arguments in the trial court that the Pinti plaintiffs presented to this court on appeal. All that distinguishes the homeowners in Pinti from the homeowners in this case is the pace of the litigation. The summary process complaint in this case was first filed in June, 2012; the complaint in Pinti seeking a judgment declaring that the foreclosure sale was void was filed in January, 2013. If this case had proceeded to judgment more promptly in the Housing Court, this appeal, rather than Pinti, might have been the one that established the so-called Pinti rule.[5]

Having so ruled, we now consider whether the homeowner defendants in this case timely and fairly raised a Pinti defense before the issuance of our Pinti decision. The judge found that they had, and we conclude that he was not clearly erroneous in so finding.

We recognize that the defendants did not specifically allege that the mortgagee's notice of default failed to strictly comply with the terms of paragraph 22 of the mortgage until they filed their cross motion for summary judgment on September 23,

---

[5] We recognize that this ruling will increase the impact our Pinti decision may have on the validity of titles, but we expect the increase to be modest and that it will simply be part of the inherent "unevenness [that] is an inevitable consequence of any change in doctrine." Galiastro v. Mortgage Elec. Registration Sys., Inc., 467 Mass. 160, 170 (2014), quoting Johnson Controls, Inc. v. Bowes, 381 Mass. 278, 283 n.4 (1980).

2015, more than two months after the issuance of our opinion in Pinti. But more than three years before that opinion, in June, 2012, they filed an answer as self-represented litigants where they checked the box proffering as a defense to the eviction that the plaintiff did not have "superior right to possession of the premises."[6] We need not consider whether the assertion of this affirmative defense alone was sufficient to give fair notice of a Pinti defense, because it is apparent from the plaintiff's memorandum in support of its motion for summary judgment, which was filed one month before the issuance of our Pinti decision, that the plaintiff recognized that the defendants had alleged that the notice of default failed to comply with the terms of paragraph 22 of the mortgage. In that memorandum, the plaintiff argued that it had complied with the requirements of paragraph 22 and that it would be "irrational and fundamentally unfair" to declare the foreclosure proceeding void because of the purported minor differences between the language of the notice of default and that of the mortgage.

_____

[6] The full text of the defense, marked box no. 67 on the answer, states:

> "The plaintiff's case should be dismissed because it does not have proper title to the property and therefore does not have standing to bring this action and/or cannot prove a superior right to possession of the premises. Wayne Inv. Corp. v. Abbott, 350 Mass. 775 (1966) (title defects can be raised as defense in summary process); G. L. c. 239, § 1 (summary process available to plaintiff only if foreclosure carried out according to law)."

Where the plaintiff recognized that the defendants had raised the Pinti issue as a defense before our Pinti decision, the judge did not err in finding that the defendants fairly and timely raised the issue and therefore were entitled to the benefit of the Pinti decision.

2. Obligation of strict compliance. Having determined that the defendants are entitled to the benefit of our holding in Pinti, we must now address whether the notice of default strictly complied with paragraph 22 of the mortgage. It did not.

Once a borrower has defaulted on a mortgage, G. L. c. 183, § 21, authorizes the mortgagee to foreclose and sell the premises, provided it "first compl[ies] with the terms of the mortgage and with the statutes relating to the foreclosure of mortgages by the exercise of the power of sale." Pinti, 472 Mass. at 232, quoting G. L. c. 183, § 21. As we explained in Pinti, supra at 236, "the 'terms of the mortgage' with which strict compliance is required -- both as a matter of common law under this court's decisions and under § 21 -- include not only the provisions in paragraph 22 relating to the foreclosure sale itself, but also the provisions requiring and prescribing the preforeclosure notice of default" (footnote omitted). See Foster, Hall & Adams Co. v. Sayles, 213 Mass. 319, 322-324 (1913).

The notice of default in this case communicated much of what paragraph 22 requires but fell short in several crucial respects.  Paragraph 22 requires that the notice "inform [the borrower] of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of [the borrower] to acceleration of sale."  Despite this language in the plaintiff's own uniform mortgage instrument, the notice declared that the borrower "may, if required by law or [the borrower's] loan documents, have the right to cure the default after the acceleration of the mortgage payments and prior to the foreclosure sale of [the borrower's] property if all amounts past due are paid within the time permitted by law" (emphasis added).  Similarly, the notice declared that the borrower "may have the right to bring a court action to assert the non-existence of a default or any other defense [the borrower] may have" (emphasis added).  We agree with the judge that this language in the notice "significantly, and inexcusably, differed from" the language in paragraph 22 of the mortgage, and "watered . . . down" the rights provided in that paragraph to the mortgagor homeowner.

The phrase, "you may, if required by law or your loan documents, have the right to cure the default after acceleration," suggests that the right to cure and reinstate is not available to every mortgagor, and that any such right is

contingent upon the law or the provisions of other loan documents. But paragraph 19 of the mortgage specifically grants a mortgagor the right to reinstatement after acceleration, and sets forth the steps required to do so. This phrase instead suggests that the homeowner may need to perform legal research and analysis to discern whether the right to cure and reinstate is available.

Similarly, rather than unequivocally inform the borrower of the right to bring a court action to attempt to prevent a foreclosure by asserting that there was no default or by invoking another defense, the notice of default stated that the borrower may have the right to bring such an action. Here, too, the implication is that the right is merely conditional, without specifying the conditions, and that the mortgagor may not have the right to file an action in court. The defendant contends that it accurately informed borrowers that they "may have" the right to bring a court action because they would have no such right if their court action lacked a good faith basis. But neither paragraph 22 of the mortgage nor the notice identified a bad faith exception to this right and we cannot reasonably infer that a borrower would understand that the "may have" language referenced such an exception.[7]

---

[7] Because we find that the notice of default was not in strict compliance with paragraph 22, we need not address the

We agree with the judge that, because the Pinti decision applies to this case and because the notice of default did not strictly comply with the requirements of paragraph 22 of the mortgage, the foreclosure sale is void.[8]

Conclusion.  The allowance of the defendants' cross motion for summary judgment, as well as the denials of the plaintiff's motions for summary judgment and for relief from judgment, are affirmed.

So ordered.

_____

defendants' contention that the plaintiff waived its argument that the notice was in strict compliance when it conceded that it was only in substantial compliance in the memorandum in support of its motion for summary judgment and at the hearing in the Housing Court.

[8] Nothing bars the plaintiff from reinitiating the foreclosure process with a notice of default that strictly complies with paragraph 22 of the mortgage.